\FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRED BOWERMAN; JULIA BOWERMAN, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellees*,<br><br>v.<br><br>FIELD ASSET SERVICES, INC.; FIELD ASSET SERVICES, LLC, n/k/a Xome Field Services, LLC, *Defendants-Appellants.* | Nos. 18-16303<br>18-17275<br><br>D.C. No.<br>3:13-cv-00057-WHO<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted July 20, 2021
Submission Vacated September 23, 2021
Resubmitted June 23, 2022
San Francisco, California

Filed July 5, 2022

Before: William A. Fletcher, Mark J. Bennett, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## Class Action / Attorneys' Fees

The panel reversed the district court's class certification order of a class of 156 individuals who personally performed work for Field Asset Services, Inc. ("FAS"), reversed the partial summary judgment in favor of the class, vacated the interim award of more than five million dollars in attorneys' fees, and remanded for further proceedings.

FAS is in the business of pre-foreclosure property preservation for the residential mortgage industry. Plaintiff Fred Bowerman was the sole proprietor of BB Home Services, which contracted with FAS as a vendor. Bowerman alleged that FAS willfully misclassified him and members of the putative class as independent contractors, rather than employees, resulting in FAS's failure to pay overtime compensation and to indemnify them for their business expenses.

FAS first argued that the district court abused its discretion by certifying the class, despite the predominance of individualized questions over common ones. Under Fed. R. Civ. P. 23(b)(3), a district court must find that common questions of fact or law to class members predominate over individual members' questions before certifying a class. The panel held that the class members could not establish FAS's liability for failing to pay overtime wages or to reimburse expenses by common evidence. The panel reversed the class certification because the class members failed to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

demonstrate that FAS's liability was subject to common proof.  Even if class members needed to prove only that they were misclassified as independent contractors to establish FAS's liability by common evidence, class certification would still be improper under Rule 23(b)(3) because the class members failed to show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Even under a narrow interpretation of *Comcast Corp.*, the class members cannot establish predominance.  Nor have the class members shown that damages can be determined without excessive difficulty.

FAS first argued that the district court abused its discretion by certifying the class, despite the predominance of individualized questions over common ones.  Under Fed. R. Civ. P. 23(b)(3), a district court must find that common questions of fact or law to class members predominate over individual members' questions before certifying a class.  The panel held that the class members could not establish FAS's liability for failing to pay overtime wages or to reimburse expenses by common evidence.  The panel reversed the class certification because the class members failed to demonstrate that FAS's liability was subject to common proof.  Even if class members needed to prove only that they were misclassified as independent contractors to establish FAS's liability by common evidence, class certification would still be improper under Rule 23(b)(3) because the class members failed to show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Even under a narrow interpretation of *Comcast Corp.*, the class members cannot establish predominance.  Nor have the class members shown that damages can be determined without excessive difficulty.

Second, FAS argued that *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 769 P.2d 399 (Cal. 1989) (" *Borello*"), not *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018) (" *Dynamex*"), applied to all the class members' claims. The panel held that the California Court of Appeal has repeatedly limited *Dynamex's* applications to claims based on or "rooted in" California's wage orders. Here, the class members' expense reimbursement claims were not based on a California wage order, but on Cal. Labor Code § 2802. Nor were they "rooted in" a California wage order, even though the class members belatedly invoked Wage Order 16-2001 in their class certification briefing. The panel rejected FAS's contention that *Borello* governed because the overtime claims were "joint employment" claims to which *Dynamex* did not apply. The panel held that *Dynamex* applied to Bowerman's overtime claims. The panel noted that FAS's joint employment would likely succeed were an actual *employee* of a vendor suing FAS, claiming that FAS was an employer. On remand, the district court may consider the joint employment issue in the first instance for class members who own or operate LLCs or corporations, which are distinct legal entities.

Third, FAS contended that the district court erred by granting summary judgment under *Borello's* multifactor and fact-intensive inquiry because, among other reasons, FAS did not control the manner and means of the class members' work. The panel first considered the expense reimbursement claims. The panel held that *Borello* governed the class members' reimbursement claims. Under *Borello*, the existence of an employment relationship is a question for the trier of fact, and the district court erred in finding no triable issue of material fact.

Third, FAS contended that the district court erred by granting summary judgment under *Borello's* multifactor and fact-intensive inquiry because, among other reasons, FAS did not control the manner and means of the class members' work.  The panel first considered the expense reimbursement claims.  The panel held that *Borello* governed the class members' reimbursement claims. Under *Borello*, the existence of an employment relationship is a question for the trier of fact, and the district court erred in finding no triable issue of material fact.

Next, the panel considered the overtime claims. *Dynamex* adopted the "ABC test" to determine employee status for purposes of wage and hour claims like the class members' overtime claims.  The ABC test presumptively considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business shows that the worker in question satisfies each of three conditions – A, B, and C.  The panel held that summary judgment would not be proper under parts A or C of the test because there were genuine disputes of material fact – whether the vendors were free from FAS's control, and whether the vendors were engaged in an independently established trade, occupation, or business.  The panel further held that summary judgment would be proper under part B of the test, which requires that the worker perform work that is outside the usual course of the hiring entity's business, but FAS failed to satisfy part B.  The facts supported the conclusion that the vendors performed services for FAS in the usual course of FAS's business.  This alone was dispositive of Bowerman's employee status under *Dynamex*. In addition to *Dynamex* considerations, since the district court's summary judgment decision, Cal. Labor Code § 2776 enacted a retroactive business-to-business exception to the ABC test, which provides that *Dynamex* does not apply to a

bona fide business-to-business contracting relationship if a business service provider contracts to provide services to another such business. In this case, the determination of employee/independent contractor status of the business provider is governed by *Borello* if the contracting business demonstrates that twelve criteria are satisfied. Viewing these criteria, the panel held that there was a genuine dispute of material fact as to whether the exception applied to FAS and its vendors. The panel concluded that because of the enactment of section 2776, summary judgment was no longer warranted on the class's overtime claims, even though summary judgment would be proper on those claims under *Dynamex* for sole proprietors like Bowerman.

The panel also held that there was a genuine dispute of material fact as to whether the class members *ever* incurred reimbursable expenses or *ever* worked overtime. Summary judgment was improper because a putative employer cannot be liable to an entire class of putative employees for failing to reimburse their business expenses and pay them overtime – unless the putative employer in fact failed to do so for each of them.

Fourth, FAS argued that the district court abused its discretion by awarding attorneys' fees. The attorneys' fee award on appeal was an interim award. The panel held that this case presented "extraordinary circumstances" that justified the exercise of pendent appellate jurisdiction over the interim fee award. The panel joined a majority of sister circuits, and held as a matter of first impression, that it could, and would, here, exercise pendent appellate jurisdiction over interim fee awards that are inextricably intertwined with or necessary to ensure meaningful review of final orders on appeal. The panel further held that the interim award of attorneys' fees must be vacated because the class

certification and summary judgment orders were issued in error.

---

**COUNSEL**

Frank G. Burt (argued) and Brian P. Perryman, Faegre Drinker Biddle & Reath LLP, Washington, D.C.; Robert G. Hulteng and Aurelio J. Pérez, Littler Mendelson P.C., San Francisco, California; Barrett K. Green, Littler Mendelson P.C., Los Angeles, California, for Defendants-Appellants.

Monique Olivier (argued), Olivier Schreiber & Chao LLP, San Francisco, California; Thomas E. Duckworth, Duckworth Peters LLP, San Francisco, California; James E. Miller, Shepherd Finkelman Miller & Shah LLP, Chester, Connecticut; for Plaintiffs-Appellees.

**OPINION**

BENNETT, Circuit Judge:

Defendant-Appellant Field Asset Services, Inc. ("FAS")[1] appeals the certification of a class of 156 individuals who personally performed work for FAS, the Plaintiffs-Appellees. It also appeals the final judgment for eleven class members under Federal Rule of Civil Procedure 54(b), after the district court granted partial summary judgment to all the class members as to liability. Finally, FAS appeals the accompanying interim award of more than five million dollars in attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand on all three issues.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  FAS's Business Model

FAS is in the business of pre-foreclosure property preservation for the residential mortgage industry. But FAS, itself, does not perform pre-foreclosure property-preservation services for its clients. Rather, it contracts with vendors who perform those services. Some vendors are sole proprietorships; others are corporations. Vendors have varying numbers of employees, from at most a few to up to sixty-five. Some work almost exclusively for FAS; others perform work for multiple companies, including FAS's clients and competitors.

---

[1] The joint motion to amend case caption is **GRANTED**. FAS is now known as Xome Field Services, LLC.

FAS exercises some control over the vendors' completion of their work.  It requires that jobs be completed within seventy-two hours; provides detailed instructions for particular tasks; and imposes insurance, photo documentation, pricing, and invoicing requirements through its Vendor Qualification Packets ("VQPs") and work orders. It offers training, although the parties dispute whether the training is mandatory.  And FAS monitors the vendors' job performance through vendor scorecards and Approved Vendor Quality Policies ("AVQPs"), which implement a discipline scale for vendor noncompliance with FAS's or FAS's clients' instructions.  FAS classifies all its vendors as independent contractors.

## B.  The Initiation of the Lawsuit and Class Certification

Named Plaintiffs Fred and Julia Bowerman[2] sued in 2013, seeking damages and injunctive relief.   Fred Bowerman was the sole proprietor of BB Home Services, which contracted with FAS as a vendor.   The operative complaint alleged that FAS willfully misclassified Bowerman and members of the putative class as independent contractors rather than employees, resulting in FAS's failure to pay overtime compensation and to indemnify them for their business expenses.

The complaint also sought class certification under Federal Rule of Civil Procedure 23(b)(3), which the district court granted for a class defined as:

---

[2] The district court determined that Julia Bowerman did not fall within the class definition.  That determination is not challenged on appeal.

> All persons who at any time from January 7,
> 2009 up to and through the time of judgment
> (the "Class Period") (1) were designated by
> FAS as independent contractors;
> (2) personally performed property
> preservation work in California pursuant to
> FAS work orders; and (3) while working for
> FAS during the Class Period, did not work for
> any other entity more than 30 percent of the
> time.  The class excludes persons who
> primarily performed rehabilitation or
> remodel work for FAS.

The parties later agreed to fix the class period as beginning on January 7, 2009, and ending on December 20, 2016.  FAS argued that the proposed class failed Rule 23(b)(3)'s predominance requirement because of the need for individualized damages hearings if liability were found.  The district court rejected this argument, quoting our decision in *Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013), for the proposition that "[t]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."  *Id.* at 514.

## C.  Summary Judgment

In March 2017, the district court granted partial summary judgment in favor of the class members, finding that they had been misclassified as independent contractors and that as a result, FAS was liable to them for failing to pay overtime and business expenses.  In making that determination, the district court relied on California's common law test for distinguishing between employees and independent contractors, as outlined in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 769 P.2d 399

(Cal. 1989).    Under *Borello*, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."   *Id.* at 404 (citation and alteration omitted).  But even though "the right to control work details is the 'most important' or 'most significant' consideration, . . . several 'secondary' indicia of the nature of a service relationship" also bear on the employee and independent contractor distinction. *Id.*  For example, *Borello* noted that "strong evidence in support of an employment relationship is the right to discharge at will, without cause." *Id.* (citation and alteration omitted).  It also listed the following as secondary indicia of an employment versus independent contractor relationship:

> (a) whether the one performing services is engaged in a distinct occupation or business;
>
> (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision;
>
> (c) the skill required in the particular occupation;
>
> (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (e) the length of time for which the services are to be performed;

> (f) the method of payment, whether by the time or by the job;
>
> (g) whether or not the work is a part of the regular business of the principal; and
>
> (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.*  *Borello* explained that "[g]enerally, the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." *Id.* (citation and alteration omitted).

Applying this test, the district court granted partial summary judgment on the misclassification issue because it was "convinced that the overwhelming evidence on the most important factor of the [*Borello*] test"—that is, control—"tip[ped] the scales clearly in favor of finding an employee relationship."  In particular, the district court found that "[n]o reasonable juror could review the Vendor Packets, the work orders, the trainings, the Vendor Profiles, the discipline, and the Vendor scorecards, and conclude [that] any of the Vendors are independent contractors."

Despite its conviction that the control factor supported the class, the district court's analysis of *Borello*'s secondary factors was materially different.  The district court stated that if it "ignored the right to control analysis, and focused solely on the secondary factors, [it] would not grant summary judgment."  In fact, the district court found that many of the secondary factors indicated independent contractor status, including the parties' intent to create an independent contractor relationship, the class members' opportunity for profit or loss, and the class members' employment of

assistants.  Several of the other secondary factors implicated genuine disputes of material fact.[3]

But the district court found that FAS's "right to control swamp[ed] [the secondary] factors in importance, and [some] secondary factors favor[ed] plaintiffs' argument that [they] are employees."  Thus, the district court granted partial summary judgment to the class on the misclassification issue.  The district court also granted partial summary judgment to the class on their overtime and expense reimbursement claims, which were derivative of the misclassification claim.  In doing so, the district court relegated the issues of "whether a particular [class member] worked overtime on a specific day" (or ever), and "whether a specific expense" (or any) "was reasonable and necessary" to the damages phase of the trial, rather than the liability phase.

## D.  The Bellwether Jury Trial

In July 2017, the district court held a bellwether jury trial to determine damages for Named Plaintiff Fred Bowerman and ten of the 156 class members.[4]  The trial lasted eight

---

[3] For example, the district court was "not sure how to evaluate" whether FAS supplied the instrumentalities, tools, and place of work because "[b]oth parties present[ed] evidence supporting their positions."

[4] After trial, FAS renewed its motion for judgment as a matter of law, arguing that the verdict as to five of the eleven claimants in their personal capacity was improper because "any expenses incurred in connection with the businesses of [those] Five Claimants were incurred by the corporate form, and not incurred personally by the claimant."  The district court correctly denied the motion.  Under California law, a plaintiff can incur expenses even without ultimately paying them. *See, e.g.*, *Cochran v. Schwan's Home Serv., Inc.*, 176 Cal. Rptr. 3d 407, 412–13 (Ct. App. 2014) ("If an employee is required to make work-related

days, as the class members' damages were neither evident from any records detailing their overtime hours and reimbursable expenses, nor calculable by any common method. After the bellwether trial, FAS filed a second motion for class decertification, which the district court construed as a motion for leave to file a motion for reconsideration. Although the district court denied the motion, it acknowledged the difficulty of calculating every class member's damages on an individualized basis with no method for doing so other than the class members' individualized testimony, noting that "[t]he damages phase of this class action [will be] far messier than promised by plaintiffs' counsel when" the case was certified.[5]

### E. Appeal and Stay of Proceedings After the California Supreme Court's Decision in *Dynamex*

Between the district court's summary judgment decision and FAS's first notice of appeal in July 2018, the California Supreme Court decided *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018), which established a different test for distinguishing between employees and independent contractors in certain contexts, commonly known as "the ABC test." *Id.* at 34. Unlike the *Borello* test, "[t]he ABC test presumptively considers all workers to be employees, and permits workers to be classified as

---

calls on a personal cell phone, then he or she is incurring an expense for purposes of [California Labor Code §] 2802. It does not matter whether the phone bill is paid for by a third person, or at all.").

[5] As noted above, the judgment as to the bellwether trial was certified under Federal Rule of Civil Procedure 54(b). The district court was referencing the difficulties in the bellwether trial that would also be present (although obviously on a much greater scale) in the damages phase of the trial for the remaining class members.

independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions":

> (a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and*

> (b) that the worker performs work that is outside the usual course of the hiring entity's business; *and*

> (c) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

*Id.* We certified the issue of *Dynamex*'s retroactivity to the California Supreme Court in *Vazquez v. Jan-Pro Franchising International, Inc.*, 939 F.3d 1045 (9th Cir. 2019), and held FAS's appeal in abeyance. The California Supreme Court held that *Dynamex* does apply retroactively, *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 478 P.3d 1207, 1208 (Cal. 2021), and we affirmed that applying *Dynamex* retroactively comports with due process, *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1117–18 (9th Cir. 2021).

## F.  The Interim Award of Attorneys' Fees

In July 2018, class counsel moved in the district court for an award of attorneys' fees and related expenses, with no notice to the class members. In September 2018, the district

court issued an interim order stating that the record was "not sufficient to tell whether all of the time plaintiffs [sought] to have compensated for 32 time-billers was reasonably incurred." Accordingly, the district court ordered an in-camera inspection of class counsel's contemporaneous time records. Although FAS sought access to those records, the district court never allowed that access.

In November 2018, the district court issued an interim fee award of $5,173,539.50. It did not "summarize the facts or posture of the case, except to say that it include[d] novel issues that the Ninth Circuit [would] address and that it was aggressively defended."

The district court thus began by awarding the lead counsel $3,381,540, which it justified with the following brief explanation:

> The hourly rates they seek . . . are well within the reasonable range. The amount of time they billed in each of the categories is also reasonable, as lead counsel in small firms must not only coordinate all of the work in the case to ensure it is geared to effective advocacy at trial but must also bear the laboring oar on many aspects of the litigation.

The district court then awarded non-lead counsel $1,792,138.50 (they sought $1,991,265). It justified that decision with another brief explanation:

> The contemporaneous records of plaintiffs' counsel show that the 28 timekeepers were performing substantive work with a minimum of overlap. However, it is inherently inefficient to have so many people

working on a legal project.  With such a large group, it is inevitable that information needs to be shared, common issues discussed, and overlapping tasks performed.  I will reduce the sum requested for the 28 timekeepers, $1,991,265, by 10% for that inefficiency. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.").

The district court reserved decision on whether to apply a multiplier.

## II.  STANDARDS OF REVIEW

We review the class certification for an abuse of discretion, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009); the grant of summary judgment de novo, *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010); and the award of attorneys' fees for an abuse of discretion, *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

## III.  DISCUSSION

FAS makes four arguments on appeal.  It first maintains that the district court abused its discretion by certifying the class, despite the predominance of individualized questions over common ones.  Second, FAS argues that *Borello*, not *Dynamex*, applies to all the class members' claims, because *Dynamex* does not apply to joint employment claims, or to claims that are not based on or rooted in one of California's wage orders.  Third, it contends that the district court erred

by granting summary judgment under *Borello*'s multifactor and fact-intensive inquiry, because, among other reasons, FAS does not control the manner and means of the class members' work. And fourth, FAS argues that the district court abused its discretion by awarding interim attorneys' fees without giving FAS access to the time records on which the award was based, without notifying class members of class counsel's fee motion, without finding the facts specially, and without providing a precise but clear explanation of its reasons for the award.[6] We address each argument in turn.

## A. Class Certification

Under the predominance requirement of Rule 23(b)(3), a district court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" before certifying a class. Here, the class fails that requirement because it cannot establish by common evidence either FAS's liability, or damages stemming from that alleged liability, to individual class members.

FAS's opening brief states that "[a]ll agree that plaintiffs cannot prove, through common evidence, that class members worked overtime hours or that claimed expenses are reimbursable." The class members' answering brief does

---

[6] FAS also argues that expenses recovered by five of the class members in the bellwether jury trial are not recoverable because they were paid by the class members' businesses rather than the class members in their personal capacities. But as explained above, *supra* p. 13 n.4, members of the class can still incur expenses for purposes of section 2802 even if their businesses ultimately pay the bill. *See Cochran*, 176 Cal. Rptr. 3d at 412–13.

not contest that claim.[7]  Accepting it as true, then, *see United States v. Baldon*, 956 F.3d 1115, 1126 (9th Cir. 2020), the class members cannot establish FAS's liability for failing to pay overtime wages or to reimburse business expenses by common evidence.

We need not decide whether common evidence can prove that FAS has a uniform policy of misclassifying its vendors.  FAS's *liability* to any class member for failing to pay them overtime wages or to reimburse their business expenses would implicate highly individualized inquiries on whether that particular class member *ever* worked overtime or *ever* incurred any "necessary" business expenses.  Cal. Lab. Code § 2802(a).  Under such circumstances, class certification is improper.  *Cf. Sotelo v. MediaNews Grp., Inc.*, 143 Cal. Rptr. 3d 293, 303–06 (Ct. App. 2012) (affirming denial of class certification because there was no common evidence that individual plaintiffs worked overtime), *disapproved of on other grounds by Noel v. Thrifty Payless, Inc.*, 445 P.3d 626 (Cal. 2019); *Wilson v. La Jolla Grp.*, 276 Cal. Rptr. 3d 118, 134–35 (Ct. App. 2021)

---

[7] Nor does the answering brief contest FAS's assertions that "[a]ll who testified [during the bellwether jury trial] relied on their unaided memories as the primary or sole evidence of their work schedules," and that "[n]one offered time-entry data or other contemporaneous records of hours worked," as confirmed by the trial record.  The class argues only that "[u]niform, class-wide evidence establishes that FAS's policy and practice is not to pay overtime, and not to reimburse the Workers for any business expenses incurred."  But uniform evidence that FAS *won't* pay overtime wages or reimburse business expenses *if* any are owed does not amount to evidence that FAS had a uniform policy that required the class to work overtime or incur reimbursable expenses.  *See Sotelo v. MediaNews Grp., Inc.*, 143 Cal. Rptr. 3d 293, 305 (Ct. App. 2012) (explaining that a class may establish liability by proving that an alleged employer has "a uniform policy that requires putative class members *to work* overtime" (emphasis added)).

(affirming denial of class certification in part because there was no common evidence that individual plaintiffs incurred reimbursable business expenses).

The class members resist this conclusion by relying on the established principle that "the presence of individualized damages cannot, by itself, defeat class certification." *Leyva*, 716 F.3d at 514; *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). In doing so, they mischaracterize an issue of individualized *liability* as an issue of individualized *damages*.

In *Castillo v. Bank of America, NA*, 980 F.3d 723 (9th Cir. 2020), the plaintiff also argued that Rule 23(b)(3) certification was proper because "all of the alleged individualized inquires [were] mere questions of damages (and not liability)." *Id.* at 731. We disagreed, distinguishing between the *calculation* of damages and the *existence* of damages in the first place. As we explained, "[t]he issue [was] not that [the plaintiff was] unable to prove the extent of the damages suffered by each individual plaintiff at this stage." *Id.* at 732. "Instead, it [was] that [the plaintiff had] been unable to provide a common method of proving the *fact* of injury and *any* liability." *Id.* (emphases added). We thus affirmed the district court's denial of class certification, holding that "[i]ndividual differences in *calculating* the amount of damages will not defeat class certification where common issues otherwise predominate . . . , [but] if the plaintiffs cannot prove that damages *resulted* from the defendant's conduct, then the plaintiffs cannot establish predominance." *Id.* at 730 (emphases added) (quotation marks, citation, and brackets omitted). Because the same

"general rule goes to the crux of the issue on appeal here," we reverse the class certification because the class members failed to demonstrate that FAS's liability is subject to common proof. *Id.*

Furthermore, even if the class members needed to prove only that they were misclassified as independent contractors to establish FAS's liability by common evidence, class certification would still be improper under Rule 23(b)(3) for yet another reason—the class members' failure to show "that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). We recently reaffirmed that Rule 23(b)(3) permits "the certification of a class that potentially includes more than a de minimis number of uninjured class members" because it "requires only that the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). Thus, "a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones." *Id.*

Even under our narrow interpretation of *Comcast Corp. v. Behrend*, 569 U.S. 27, the class members cannot establish predominance. As already explained, the class members cannot show by common evidence that individual class members would be entitled to overtime wages or to expense

reimbursement if found to be employees.  Thus, the class members cannot show that the whole class suffered damages traceable to their alleged misclassification as independent contractors.

Nor have the class members shown that damages can be determined without excessive difficulty.  To the contrary, the district court conceded in its most recent order denying FAS's motion for class decertification that "[t]he damages phase of this class action [will be] far messier than promised by plaintiffs' counsel when" the case was certified.  As the district court explained, "[b]ecause the documentary evidence maintained by the vendors . . . [is] scant at best, . . . [p]roof by the testimony of [individual] vendors is necessary."  As it turns out, using the individual testimony of self-interested class members to calculate the overtime hours they worked and the business expenses they incurred isn't easy.  Rather, such an approach has predictably caused the "excessive difficulty" that *Comcast* and our later decisions interpreting *Comcast* have sought to avoid.  *Just Film, Inc.*, 847 F.3d at 1121.  Already, it has taken eight days to determine damages for only eleven of the 156 class members.

Thus, because the class members have not necessarily suffered damages traceable to their alleged misclassification, and because they have not presented a method of calculating damages that is not excessively difficult, they have failed to satisfy *Comcast*'s simple command that the case be "susceptible to awarding damages on a class-wide basis."

569 U.S. at 32 n.4.  That failure provides an independent basis for reversing the class certification.[8]

## B.  The Proper Employment Test

### 1.  Expense Reimbursement Claims

"*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections."  *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018).  Rather, *Dynamex* was clear that it "address[ed] only" the issue of how to distinguish between employees and independent contractors "with regard to those claims that derive directly from the obligations imposed by [a] wage order."  416 P.3d at 25.  *Dynamex* further suggested that its holding should not extend beyond that context, by describing the ABC test as a "*distinct* standard that provides *broader* coverage of workers with regard to the very fundamental protections afforded by

---

[8] In addition to Rule 23(b)(3)'s predominance requirement, Rule 23(b)(3)'s superiority requirement further requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  FAS argues that a class action is not superior to other methods of resolving this case because the class members have interests in individually controlling their claims, *see* Fed. R. Civ. P. 23(b)(3)(A), given that they "stand to recover five- and even six-figure awards."  Although the Supreme Court has explained that "the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high," it has also explained that "the Advisory Committee [for Rule 23(b)(3)] had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal quotation marks omitted).  Thus, even though the large damages awards the class members stand to gain are not sufficient on their own to overcome Rule 23(b)(3) certification, they support doing so.

*wage and hour laws and wage orders*," given "the [Industrial Welfare Commission's] determination that it is appropriate to apply a *distinct and particularly expansive* definition of employment regarding obligations imposed *by a wage order*."[9]  *Id.* at 29 (emphases added).

The California Supreme Court's subsequent decision in *Vazquez v. Jan-Pro Franchising International, Inc.*, 478 P.3d 1207, affirmed that "[i]n *Dynamex*, [the] court was faced with a question of first impression: What standard applies under California law in determining whether workers should be classified as employees or independent contractors *for purposes of the obligations imposed by California's wage orders*?"  *Id.* at 1208 (emphasis added).  It also held that *Dynamex* "did not change a settled rule" like the *Borello*

---

[9] The California Supreme Court elaborated that its holding "[found] its justification in the fundamental purposes and necessity of the minimum wage and maximum hour legislation in which the standard has traditionally been embodied":

> Wage and hour statutes and wage orders were adopted in recognition of the fact that individual workers generally possess less bargaining power than a hiring business and that workers' fundamental need to earn income for their families' survival may lead them to accept work for substandard wages or working conditions.  The basic objective of wage and hour legislation and wage orders is to ensure that such workers are provided at least the minimal wages and working conditions that are necessary to enable them to obtain a subsistence standard of living and to protect the workers' health and welfare.  These critically important objectives support a very broad definition of the workers who fall within the reach of the wage orders.

*Dynamex*, 416 P.3d at 31–32 (citations omitted).

test, as applied *outside* the wage order context.  *Id.* at 1209. Consistent with that guidance, the California Court of Appeal has repeatedly limited *Dynamex*'s application to claims based on or "rooted in" California's wage orders.[10] *See Vendor Surveillance Corp. v. Henning*, 276 Cal. Rptr. 3d 458, 468–69 (Ct. App. 2021); *Gonzales v. San Gabriel Transit, Inc.*, 253 Cal. Rptr. 3d 681, 701–04 (Ct. App. 2019); *Garcia v. Border Transp. Grp., LLC*, 239 Cal. Rptr. 3d 360, 370–71 (Ct. App. 2018).

Here, the class members' expense reimbursement claims are not based on a California wage order, but on California Labor Code § 2802.[11]  Nor are they "rooted in" a California wage order, even though the class members belatedly invoked Wage Order 16-2001 in their class certification briefing.  Wage Order 16-2001 does not "cover[] most of the [section 2802] violations alleged," and its provisions are not "equivalent or overlapping" with section 2802.  *Gonzales*, 253 Cal. Rptr. 3d at 702, 704.  Although section 2802 covers "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or

---

[10] In the absence of controlling authority by the California Supreme Court, "we follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010).

[11] Assembly Bill 5 codified "the ABC test and expanded its reach to apply to all claims under the Labor Code and the Unemployment Insurance Code."  *People v. Superior Court*, 271 Cal. Rptr. 3d 570, 574 (Ct. App. 2020); *see also* Cal. Lab. Code § 2775(b)(1).  The ABC test's extension "was prospective, with an effective date of January 1, 2020." *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 912 (9th Cir. 2021) (citing Cal. Lab. Code § 2785(c)).  Because the claims at issue in this case arise from conduct that occurred before January 1, 2020, AB 5 does not decide the test applicable to the expense reimbursement claims.

her duties," Cal. Lab. Code § 2802(a), Wage Order 16-2001 covers only "tools or equipment," Cal. Code Regs. tit. 8, § 11160.  Indeed, many expenses for which class members sought and recovered reimbursement at trial, including insurance, cellphone charges, dump fees, and mileage/fuel, are covered *only* by section 2802—*not* by Wage Order 16-2001's "tools and equipment" provision.  Thus, *Borello*, not *Dynamex*, applies to the expense reimbursement claims.

## 2.  Overtime Claims

Neither party disputes that the class members' overtime claims are based on California's wage orders.  Still, FAS insists that *Borello* governs, because FAS believes the overtime claims are "joint employment" claims to which *Dynamex* does not apply.

FAS is correct that *Dynamex* does not apply to joint employment claims.  The California Supreme Court created *Dynamex*'s ABC test to address "concerns . . . regarding the disadvantages . . . inherent in relying upon a multifactor, all the circumstances standard for distinguishing between employees and independent contractors."  416 P.3d at 35.  Those concerns include (1) "that a multifactor, 'all the circumstances' standard makes it difficult for both hiring businesses and workers to determine in advance how a particular category of workers will be classified, frequently leaving the ultimate employee or independent contractor determination to a subsequent and often considerably delayed judicial decision"; and (2) that it "affords a hiring business greater opportunity to evade its fundamental responsibilities under a wage and hour law by dividing its workforce into disparate categories and varying the working conditions of individual workers within such categories with an eye to the many circumstances that may be relevant."  *Id.* at 33–34.

Because these "reasons for selecting the 'ABC' test are uniquely relevant to the issue of allegedly misclassified independent contractors," the ABC test does not extend to the joint employment context, where those concerns are no longer present. *Curry v. Equilon Enters., LLC*, 233 Cal. Rptr. 3d 295, 313–14 (Ct. App. 2018). Indeed, "[i]n the joint employment context, the alleged employee is already considered an employee of the primary employer," who "is presumably paying taxes." *Id.* at 313. Furthermore, "the employee is afforded legal protections due to being an employee of the primary employer." *Id.* As a result, the policy purpose behind *Dynamex*'s ABC test, i.e., "the policy purpose for presuming the worker to be an employee and requiring the secondary employer to disprove the worker's status as an employee[,] is unnecessary" in joint employment cases, "in that taxes are being paid and the worker has employment protections." *Id.* at 313–14; *see also Henderson v. Equilon Enters., LLC*, 253 Cal. Rptr. 3d 738, 753–54 (Ct. App. 2019) (holding that the ABC test also does not apply to joint employment claims because "parts B and C of the ABC test do not fit analytically with such claims," *id.* at 753).

But Bowerman's claims (and those of other sole proprietors) are not joint employment claims—they are employee misclassification claims, like those in *Dynamex*. FAS argues that the class members are "employees of their [own] self-owned businesses." *Dynamex*'s policy concerns are equally applicable for sole proprietors like Bowerman because they have no putative employer other than FAS to pay their taxes or afford them legal protections under the California wage orders. *See Ball v. Steadfast-BLK*, 126 Cal. Rptr. 3d 743, 747 (Ct. App. 2011) ("[A] sole proprietorship is not a legal entity separate from its individual owner."). So *Dynamex* applies to Bowerman's overtime claims.

But FAS's joint employment argument would likely succeed were an actual *employee* of a vendor suing FAS, claiming that FAS was an employer.  Notably, Plaintiffs-Appellees' counsel conceded at oral argument that at least some of the class members are employed by entities other than FAS.**[12]**  Thus, some of the class members' theories of liability could depend on their ability to establish that FAS was a joint employer.  On remand, the district court may consider the joint employment issue in the first instance for class members who own or operate LLCs or corporations, which are distinct legal entities.**[13]**  *See Nw. Energetic Servs., LLC v. Cal. Franchise Tax Bd.*, 71 Cal. Rptr. 3d 642, 649 (Ct. App. 2008) (LLCs); *Merco Constr. Eng'rs, Inc. v. Municipal Court*, 581 P.2d 636, 639 (Cal. 1978) (corporations).

## C.  Summary Judgment

### 1. Expense Reimbursement Claims

As explained above, *Borello* governs the class members' expense reimbursement claims.  Under *Borello*, "[t]he existence of an employment relationship is a question for the trier of fact."  *Angelotti v. Walt Disney Co.*, 121 Cal. Rptr. 3d 863, 870 (Ct. App. 2011).  The existence of such a relationship "*can* be decided by the court as a matter of law *if* the evidence supports only one reasonable conclusion."

---

**[12]** This concession is perplexing given that class members, by definition, cannot "work for any other entity more than 30 percent of the time."  But we credit it, nonetheless.

**[13]** We also leave it to the district court to determine, in the first instance, whether any class members besides Bowerman remain parties to this litigation on remand.  *Cf. Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

*Id.* (emphases added). Such is not the case here. "At its heart, this case involves competing, if not necessarily conflicting, evidence that must be weighed by a trier of fact." *Arzate v. Bridge Terminal Transp., Inc.*, 121 Cal. Rptr. 3d 400, 405 (Ct. App. 2011). Thus, "the trial court erred in finding no triable issue of material fact." *Id.*

"As the parties and trial court correctly recognized, control over *how a result is achieved* lies at the heart of the common law test for employment." *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 172 (Cal. 2014) (emphasis added). The district court granted summary judgment because it was "convinced that the overwhelming evidence" of FAS's control "tip[ped] the scales clearly in favor of finding an employee relationship." Viewing the evidence in the light most favorable to FAS, that conclusion was incorrect.

California law is clear that "[i]f control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established." *Millsap v. Fed. Express Corp.*, 277 Cal. Rptr. 807, 811 (Ct. App. 1991) (citation omitted). Whether a hiring entity's control is results-oriented or means-oriented depends on how the factfinder, or the court on summary judgment, defines "results." For instance, in *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2014), we determined that "'results,' reasonably understood, refer[red] in [the] context [of package delivery services] to [the] timely and professional delivery of packages." *Id.* at 990. Thus, we rejected FedEx's argument that it was controlling only the results of its drivers' work by mandating a particular dress code from the drivers' "hats down to their shoes and socks"; by requiring them "to paint their vehicles a specific shade of white, [to] mark them with the distinctive

FedEx logo, and to keep their vehicles 'clean and presentable [and] free of body damage and extraneous markings'"; and by dictating "the vehicles' dimensions, including the dimensions of their 'package shelves' and the materials from which the shelves [were] made." *Id.* at 989 (second alteration in original). We held that "no reasonable jury could find that the 'results' sought by FedEx include[d]" such detailed requirements, which bore no logical relation to the "timely and professional delivery of packages." *Id.* at 990.

In contrast, whether FAS's control over the class members' work is means- or results-oriented should have been left to the jury. When viewed in the light most favorable to FAS, the instructions in FAS's VQPs and work orders—though detailed—are geared toward the satisfactory completion of the class members' job assignments. The same can be said for the training the class members received on following those instructions, the vendor scorecards that monitored whether they followed the instructions, and the AVQPs that disciplined those who did not.

The VQPs uniformly characterize the parties' relationship as vendor-vendee, not employer-employee. In fact, several VQPs explicitly designate or refer to the vendors as independent contractors. Consistent with that designation, the VQPs do not control *whether* a vendor accepts a particular job, *who* does the work on the vendor's behalf, *when* the work gets done, or *on what terms*. Rather, viewing the evidence in the light most favorable to FAS, the class members are free to decline FAS work orders, or to negotiate the terms of their acceptance. And if they do accept a work order, they are free to hire any employee or subcontractor who can pass a background screening to perform the work, and they are free to design their own

schedule for completing the assignment within FAS's seventy-two-hour deadline. Although such a short deadline creates a tight turnaround, we reject the district court's conclusion that this turnaround renders "FAS's argument that it does not control when vendors perform work disingenuous" and "inconsequential." Requiring a worker to complete a task within a desired timeframe is a quintessential example of controlling the *result* of that worker's job performance.

As for the VQPs' detailed instructions for particular job assignments, FAS raises a genuine dispute of material fact as to whether they control the results, and not the manner and means, of the class members' work on those assignments. For example, one VQP's instructions for "Flooring" require vendors to "replace doorstops and install shoe molding" for vinyl flooring; "replace [the] pad" for carpet; "remove and replace [the tiles], add floor leveler, thin set[,] and grout" for ceramic tile; and "add floor float and install shoe mold" for laminate/wood floors. The same VQP's instructions for "Drywall/Paint/Wallpaper" require vendors to "match [the] existing finish," "re-textur[e] the walls," and use paint that is "a neutral color and of medium grade or better." And the VQP's instructions for "Roofing" require that the new roof "not overlay [the] existing roof" and that it "[b]e consistent with neighborhood/ . . . HOA/ . . . local requirements."

Unlike the requirements in *Alexander* as to the drivers' and their vehicles' appearance, these instructions are directed toward the desired results of the vendors' work, at least when read in the light most favorable to FAS. Indeed, the right to control results is a "broad" one, encompassing "the right to inspect, the right to make suggestions or recommendations as to details of the work, [and] the right to

prescribe alterations or deviations in the work," none of which "chang[e] the relationship from that of owner and independent contractor." *Beaumont-Jacques v. Farmers Grp., Inc.*, 159 Cal. Rptr. 3d 102, 106 (Ct. App. 2013) (citations omitted). Thus, the district court erred by concluding that "[n]o reasonable juror could review the Vendor Packets, the work orders, the trainings, the Vendor Profiles, the discipline, and the Vendor scorecards, and conclude any of the Vendors are independent contractors."[14]

Turning, then, to the secondary factors, many tip in favor of independent contractor status, including the parties' intent to create an independent contractor relationship, the class members' opportunity for profit or loss, and the class members' employment of assistants. The district court correctly found for FAS on all of these, and the class members dispute only the weight—not the merits—of those findings on appeal. Several of the other secondary factors were, and continue to be, subject to genuine dispute, including the exclusivity of the class members' relationship with FAS, whether their businesses are distinct from FAS's

---

[14] In fact, in *McLeod v. Field Asset Services, LLC*, No. 15-00645, 2017 WL 338002 (S.D. Ala. Jan. 23, 2017), the district court granted summary judgment to FAS on whether it controls the manner and means, or only the results, of its vendors' work. *See id.* at *5 ("In Alabama, . . . [t]he test for determining whether a person is an agent or employee of another, rather than an independent contractor, is whether that other person has reserved the right of control over the means and method by which the person's work will be performed, whether or not the right of control is actually exercised." (citation omitted)). The court explained that "FAS merely authorizing work, reviewing the quality of work, inspecting work, reviewing photographs of work, etc. performed by [its vendor], is not tantamount to *controlling* [the vendor's] work or *how* [the vendor] performed the work." *Id.* "Rather," the court held, "those aspects are more akin to checks on the quality of the work, not control over the manner in which such work was done." *Id.*

business, and whether FAS supplied their tools, instrumentalities, and place of work. Finally, the district court erred by finding that the VQPs contain at-will termination provisions, which are "strong evidence of a right to control." Many VQPs contain no termination provision, and the VQPs cited by the district court include a *mutual* termination provision, which "may properly be included in an independent contractor agreement, and is not by itself a basis for changing that relationship to one of an employee." *Arnold v. Mut. of Omaha Ins. Co.*, 135 Cal. Rptr. 3d 213, 220 (Ct. App. 2011); *see also Varisco v. Gateway Sci. & Eng'g, Inc.*, 83 Cal. Rptr. 3d 393, 398–99 (Ct. App. 2008). Thus, the district court was right to conclude that the secondary factors do not establish that the class members are FAS's employees as a matter of law, absent clear, uncontroverted evidence that FAS controls the manner and means of their work.

In short, the class members "exhibit[] classic evidence of both an independent contractor and employee" under the *Borello* test, which "evidence must be weighed by a trier of fact." *Jackson v. AEG Live, LLC*, 183 Cal. Rptr. 3d 394, 416 (Ct. App. 2015). Thus, summary judgment on the class members' expense reimbursement claims was inappropriate.[15]

## 2. Overtime Claims

As explained above, *Dynamex* adopted the ABC test to determine employee status for purposes of wage and hour claims like the class members' overtime claims. "The ABC

---

[15] We do not foreclose summary judgment in favor of an individual class member (or FAS as to an individual class member), as the facts as to every class member are not before us.

test presumptively considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions":

> (a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work, and in fact; *and*

> (b) that the worker performs work that is outside the usual course of the hiring entity's business; *and*

> (c) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

*Dynamex*, 416 P.3d at 34.

Here, summary judgment would not be proper under parts A or C of the test. Our discussion of *Borello* already explained that genuine disputes of material fact underlie the questions of (A) whether the vendors were free from FAS's control, and (C) whether the vendors were engaged in an independently established trade, occupation, or business. But summary judgment would be proper under part B of the test. Though FAS proclaimed itself the "premier Property Preservation, [Real Estate Owned Property] Maintenance, and Repair Services company," it still contends that its vendors—those who perform those premier property preservation, maintenance, and repair services—perform work that is outside the usual course of FAS's business.

Stating the proposition is alone enough to show its fatal shortcomings.

Still, FAS insists that it satisfies part B because it "does not itself perform preservation services," but "*coordinates* the completion of preservation services, an activity distinctly different from the business of property preservation." But FAS's own advertisements belie this contention:

> FAS offers a full range of professional services for our clients, with the goal of reducing the time and costs involved in recovering and maintaining properties. Using a single point of contact, our clients can engage us for a variety of needs inside and outside the property. These include, but are not limited to, the following examples of residential real estate services: property re-key, secure openings, debris removal, repairs, eviction lockouts, personal property removal, smoke detector installs, retrofit services, lawn maintenance, janitorial service, winterization, pool maintenance, rehabilitation/construction & repairs, [and] emergency maintenance[.]

FAS's position has also been rejected by several courts considering analogous arguments by rideshare companies that they "are in the business solely of creating technological platforms, not of transporting passengers"—including the California Court of Appeal in *People v. Uber Technologies, Inc.*, 270 Cal. Rptr. 3d 290, 311 (Ct. App. 2020). *See also id.* at 311–14 (collecting cases). In doing so, the California Court of Appeal considered that ridesharing companies market themselves as on-demand ride services, actively seek

out customers for those services, make money only if those services are provided, monitor the quality of the services, and discipline drivers who deliver deficient services. *Id.* at 311–14. FAS markets itself as providing comprehensive property preservation services, advertises to clients needing such services, makes money only if those services are provided, monitors the quality of those services through vendor scorecards, and disciplines its vendors for deficient services through AVQPs. As in *Uber Technologies*, "[t]hese facts amply support the conclusion that" the vendors "perform services for [FAS] in the usual course of [FAS's] business[]." *Id.* at 313–14.

FAS resists this conclusion by analogizing to *Curry v. Equilon Enterprises, LLC*, 233 Cal. Rptr. 3d 295. The California Court of Appeal stated (in dicta) that under *Dynamex*, the managers of Shell stations were *not* the employees of Shell, which leased its service stations to third-party operators who in turn employed the managers. *Id.* at 314–15. The Court of Appeal accepted Shell's argument that it "was not in the business of operating fueling stations—it was in the business of owning real estate and fuel"—and thus concluded that "there [was] not a triable issue of fact as to the 'B' factor because managing a fuel station was not the type of business in which Shell was engaged." *Id.* at 314.

The court in *Uber Technologies* found *Curry* "readily distinguishable," contrasting the "situation in which a putative joint employer leases facilities to a worker's direct employer and has no involvement in the worker's employment or compensation" with the situation in which a putative employer's "usual course of business involves the day-to-day task of matching riders and drivers each time a user requests a ride, arranging for riders' payments to be

processed, and retaining a portion of the proceeds from each ride." *Uber Techs.*, 270 Cal. Rptr. 3d at 315. Like *Uber Technologies*, this is not a joint employment case but a misclassification case regarding sole proprietors like Bowerman, and the putative employer's business centers on the services the plaintiffs provide. Thus, the reasoning of *Uber Technologies* applies and dictates that Bowerman performed work well within the usual course of FAS's business under part B of the ABC test, which is alone dispositive of his employee status under *Dynamex*. *See* 416 P.3d at 34.

But *Dynamex* is not the only new development in California employment law since the district court's summary judgment decision. California Labor Code § 2776 recently enacted a retroactive *business-to-business* exception to the ABC test. *See* Cal. Lab. Code § 2785(b). Under that exception, "the holding in *Dynamex* do[es] not apply to a bona fide business-to-business contracting relationship . . . [i]f an individual acting as a sole proprietor, or a business entity formed as a partnership, limited liability company, limited liability partnership, or corporation ('business service provider') contracts to provide services to another such business." *Id.* § 2776(a). Instead, "the determination of employee or independent contractor status of the business services provider shall be governed by *Borello*, if the contracting business demonstrates that [each of twelve] criteria [is] satisfied."[16] *Id.*

---

[16] The twelve criteria are as follows:

    1)   The business service provider is free from the control and direction of the contracting business entity in connection with the performance of the

work, both under the contract for the performance of the work and in fact.

2) The business service provider is providing services directly to the contracting business rather than to customers of the contracting business. This subparagraph does not apply if the business service provider's employees are solely performing the services under the contract under the name of the business service provider and the business service provider regularly contracts with other businesses.

3) The contract with the business service provider is in writing and specifies the payment amount, including any applicable rate of pay, for services to be performed, as well as the due date of payment for such services.

4) If the work is performed in a jurisdiction that requires the business service provider to have a business license or business tax registration, the business service provider has the required business license or business tax registration.

5) The business service provider maintains a business location, which may include the business service provider's residence, that is separate from the business or work location of the contracting business.

6) The business service provider is customarily engaged in an independently established business of the same nature as that involved in the work performed.

7) The business service provider can contract with other businesses to provide the same or similar

Viewing those criteria, there is a genuine dispute of fact as to whether the exception applies to FAS and its vendors. For example, one criterion is that "[t]he business service provider [be] free from the control and direction of the contracting business entity in connection with the performance of the work, both under the contract for the performance of the work and in fact." *Id.* § 2776(a)(1). Another is that "[t]he business service provider [be] customarily engaged in an independently established

services and maintain a clientele without restrictions from the hiring entity.

8) The business service provider advertises and holds itself out to the public as available to provide the same or similar services.

9) Consistent with the nature of the work, the business service provider provides its own tools, vehicles, and equipment to perform the services, not including any proprietary materials that may be necessary to perform the services under the contract.

10) The business service provider can negotiate its own rates.

11) Consistent with the nature of the work, the business service provider can set its own hours and location of work.

12) The business service provider is not performing the type of work for which a license from the Contractors' State License Board is required, pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code.

Cal. Lab. Code § 2776(a).

business of the same nature as that involved in the work performed." *Id.* § 2776(a)(6).   As already explained at length, FAS's control of its vendors, as well as the independence of the vendors' businesses from FAS's business, are genuinely disputed factual issues.[17]   Thus, because of the enactment of section 2776, summary judgment is no longer warranted on the class's overtime claims, even though summary judgment *would* be proper on those claims under *Dynamex* for sole proprietors like Bowerman.

### 3.  All Claims

We hold above that there is a genuine dispute of material fact as to whether the class members are employees or independent contractors—under *Borello* for the expense reimbursement claims and under the business-to-business exception for the overtime claims.   But there is also a genuine dispute of material fact as to whether the class members *ever* incurred reimbursable expenses or *ever* worked overtime.   Thus, summary judgment was also improper for the very same reason that the class certification was: a putative employer cannot be liable to an entire class of putative employees for failing to reimburse their business expenses and pay them overtime unless the putative employer in fact failed to do so for each of them.

---

[17] We reject plaintiffs' request that we rule, on appeal, that FAS, as a matter of law, cannot invoke the business-to-business exception as to *any* class member.   We do not foreclose the district court from determining, on remand, that FAS may not rely on the business-to-business exception as to a particular class member, should the undisputed evidence as to that class member so warrant.

### D.  Attorneys' Fees

Under 28 U.S.C. § 1291, we have jurisdiction over final district court decisions.  The attorneys' fee award on appeal is an *interim* award.  It "does not dispose of the underlying litigation" and "does not even dispose of the issue of attorney's fees," given that the district court reserved its decision on whether to apply a multiplier.  *Rosenfeld v. United States*, 859 F.2d 717, 720 (9th Cir. 1988).  Thus, we consider the order nonfinal for purposes of § 1291.  *See id.*; *Hillery v. Rushen*, 702 F.2d 848, 848–49 (9th Cir. 1983) (same); *cf. Gates v. Rowland*, 39 F.3d 1439, 1450 (9th Cir. 1994) (treating an interim fee award as final when it "follow[ed] a final judgment on the merits" and "dispose[d] of the issue of attorneys' fees"); *Finnegan v. Dir., Off. of Workers' Comp. Programs*, 69 F.3d 1039, 1040–41 (9th Cir. 1995) (same).

Nevertheless, we hold that this case presents "extraordinary circumstances" justifying our exercise of pendent appellate jurisdiction over the interim fee award. *McCarter v. Ret. Plan for the Dist. Managers of the Am. Fam. Ins. Grp.*, 540 F.3d 649, 653 (7th Cir. 2008).  We have the power to exercise pendent jurisdiction over claims "raised in conjunction with other issues properly before the court . . . if the rulings [are] inextricably intertwined or if review of the pendent issue [is] necessary to ensure meaningful review of the independently reviewable issue." *United States v. Tillman*, 756 F.3d 1144, 1149 (9th Cir. 2014) (internal quotation marks omitted).  That requirement is satisfied here because FAS's primary argument for vacating the interim fee award is that the district court erred by certifying the class and granting summary judgment to the plaintiffs—issues that are not just "inextricably

intertwined" with FAS's appeal of the class certification and summary judgment orders; they are identical.

The plaintiffs argue that most courts "have found that interim fee awards are not immediately appealable under the doctrine of pendent jurisdiction," but that can be an oversimplification.  In truth, most of the courts to have confronted the issue in this case—whether to exercise pendent appellate jurisdiction over an interim order that is inextricably intertwined with an independently appealable order—have concluded that the order *is* immediately appealable under the doctrine of pendent jurisdiction, consistent with the Supreme Court's holding in *Swint v. Chambers County Commission*, 514 U.S. 35 (1995).  *See id.* at 51 (implying that appellate courts should not exercise pendent jurisdiction to review claims that are not "inextricably intertwined with" or "necessary to ensure meaningful review of" the final order on appeal); *see also, e.g.*, *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 454 (5th Cir. 1998) (per curiam); *Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake Cnty. Fla.*, 947 F.3d 1362, 1372 (11th Cir. 2020); *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 678–79 (D.C. Cir. 1996) (per curiam).  *But see Home Builders Ass'n of Greater St. Louis v. L & L Exhibition Mgmt., Inc.*, 226 F.3d 944, 951 (8th Cir. 2000). Today we join the majority of our sister circuits, and hold as a matter of first impression, *see Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1187–88 (9th Cir. 2003), that we can—and here, will—exercise pendent appellate jurisdiction over interim fee orders that are inextricably intertwined with or necessary to ensure meaningful review of final orders on appeal.

The interim award of attorneys' fees must be vacated because the class certification and summary judgment orders

were issued in error.  *See Hopkins v. City of Sierra Vista*, 931 F.2d 524, 529 (9th Cir. 1991) ("Because we reverse and remand for further proceedings on the merits, there is no prevailing party and we must also reverse the district court's award of attorneys' fees.").

## IV.  CONCLUSION

Under the right circumstances, class certification and summary judgment are useful mechanisms for the speedy resolution of claims.  But those circumstances are not present here.  We therefore **REVERSE** the class certification order, **REVERSE** the summary judgment order, **VACATE** the interim award of attorneys' fees, and **REMAND** to the district court for proceedings consistent with this opinion, with costs awarded to FAS.